## Asa Torrey v. Robert Buck and others.

An application to the court to compel the specific performance of a contract rests in sound discretion, and the contract will be enforced or not, as shall appear most agreeable to justice and equity.

Where, on a contract for the purchase of real estate between A. and B., the deed is made to C. at the request of B.; on a bill to set aside the deed for

[Torrey v. Buck et al.]

fand, C. will not stand in any other or better situation than B. the pur-chaser would have done had the title been made directly to him.

The substitution of the name of a third person in the deed in the place of the purchaser, and at his instance, will not place the grantee in the situation of a bona fide purchaser without notice.

*Suppressio veri* is as good a ground for setting aside a conveyance as *suggestio falsi.*

Deed set aside as fraudulent where a large part of the consideration was paid in stock of a company of no value, although the purchaser, who was cashier of the company, refused to express any opinion about the stock or its value, referring the vendor to other persons for information, and although the vendor himself declared that he knew it was a speculation and intended to run the risk.

The folly and indiscretion of a vendor can never justify the vendee in obtaining his property without compensation.

THE bill, filed on the 6th of June, 1838, states, that the complainant, being seized of a valuable house and lot in the city of Newark, Lewis Loomis, of the city of New-York, proposed to purchase it for ten thousand dollars in cash, to which the complainant consented.    That Loomis from time to time evaded the execution of the contract, and at length told the complainant that he could not raise the money, but that he knew a person who probably would purchase the property, and offered to intro-duce the complainant to him.    He accordingly accompanied the complainant to the office of the " United States foreign and do-mestic exchange company," at No. 8 Wall-street, in the city of New-York, and introduced him to Robert Buck, one of the de-fendants, and who was then stated to be, and in fact was, the cashier of said company.    That Buck then represented the cha-racter of said company to be high, and its stock equal to cash, and offered to buy the complainant's property provided he would take two thousand dollars in cash, and the balance of the pur-chase money in the stock of the said company.    That after con-siderable conversation Buck declined to purchase, but said he knew a person that would; and soon afterwards he came to Newark with Samuel H. Hamilton, and two other persons of the name of Hamilton, whom Buck introduced as the persons likely to purchase complainant's property.    That one of them

offered complainant nine thousand dollars for the property, pro-
vided the complainant would take stock of the United States
foreign and domestic exchange company in part payment; to
which proposal the complainant subsequently assented, and so
informed one of the Hamiltons. That at the time of the last
negociation for the purchase of the property, both Buck and the
Hamiltons represented the stock of the said company to be as
good as cash. That during the negociation, Buck and the
Hamiltons acted together; that complainant did not know who
was purchasing, nor to whom the deed was to be made, until
the name of Samuel H. Hamilton was given to him to be insert-
ed in the deed. That complainant refused at first to take more
than five thousand dollars in the stock of said company, and
claimed the balance, excepting seven hundred and fifty dollars,
the amount of a mortgage then on the property, to be paid in
cash; but that Buck and the Hamiltons, or one of them, repre-
sented that they had not money enough to close the negociation
on that basis, and offered complainant a note given by John
Trafton for twelve hundred and fifty dollars, dated January 2d,
1838, at six months, endorsed by Buck, as so much cash; and
upon their assurances that they would discount said note in a few
days, complainant agreed to take it, and also to take five thou-
sand one hundred dollars worth of stock, leaving one thousand
nine hundred dollars to be provided for—of which sum upwards
of one thousand three hundred dollars was paid in cash, and the
balance by a note given by one of the Hamiltons to complainant.
That scrip or certificates of stock of the United States foreign
and domestic exchange company, signed by the president, and
by Robert Buck, cashier of said company, dated on the 10th of
January, 1838, and issued in the name of the complainant, in
several different sums, amounting to five thousand one hundred
dollars, which had been brought to Newark by Buck on the day
of the purchase, were thereupon delivered to complainant, to-
gether with the notes of Trafton and Hamilton, and a deed exe-
cuted by complainant and wife to Hamilton, dated 13th January,
1838, was also delivered to him; it being agreed that the pos-

[Torrey v. Buck et al.]

session of the premises should be delivered between the first and the fifteenth of April then next. The bill charges, that at the time of the negociations for the sale of said property, and at the time of the execution of the contract and the transfer of the stock to the complainant, the stock of the said company was of little or no value; that this fact was well known to the defendants at the time of the representations so made by them to him as aforesaid respecting its value; that the said representations were utterly false and fraudulent, and that the defendants combined and conspired together to deceive the complainant in relation to the value of the said stock, and to induce him to receive it in part payment for the premises so sold, knowing it to be of little or no value. The bill further states, that the Trafton note is of no value; that no part of it can be recovered; and that Buck and Samuel H. Hamilton, at the time when they represented to complainant that the note was good and that it would be discounted in a few days, knew it to be of little or no value. That complainant's application to have the note discounted, after being delayed from time to time, was at length positively refused; and that the complainant, believing that a gross fraud had been practiced upon him, had by the advice of his counsel refused to deliver possession of the premises to Samuel H. Hamilton, the grantee, and that Hamilton had caused an action of ejectment to be commenced for the recovery of the possession, which was pending, at issue. The bill prays, that the deed executed by the complainant and his wife to Hamilton may be declared void, and may be ordered to be delivered up to be cancelled; or that Hamilton may be decreed to reconvey the premises to the complainant on the complainant's repaying to him the monies received, redelivering the securities paid and delivered to the complainant as the consideration of the purchase of said premises; and that in the meantime Hamilton may be restrained by injunction from further proceeding at law to recover possession of the premises.

On filing the bill an injunction issued, pursuant to the prayer of the bill.

48

The answer of Robert Buck and Samuel H. Hamilton admits the complainant's title to the premises, as set forth in the bill of complaint—denies all knowledge on the part of either of said defendants of any offer made by Lewis Loomis for the premises, or of any negociation ever pending between him and the complainant for the purchase of said property. Hamilton, for himself, states, that in January, 1838, he learned from Buck that he had been negociating for the purchase of a house and lot in Newark with the complainant, who wanted in payment more cash than he, Buck, could pay; and that if Hamilton was disposed to purchase the property, he, Buck, could make a satisfactory payment in property he held to the amount of five thousand dollars, which sum he was desirous of investing in the purchase of part of a patent right which Hamilton then owned for sawing timber and felling forest trees. That Hamilton went to Newark, accompanied by his brother, A. J. Hamilton, a lawyer residing in the city of New-York, for the purpose of seeing the property and having the title examined. That after seeing the property, and ascertaining the incumbrances upon it, he returned to New-York and informed Buck that he would give nine thousand dollars and no more for it, provided Buck would receive in payment a conveyance of the patent right for sawing timber and felling trees for the states of Massachusetts and Vermont for five thousand dollars, a transfer of two notes of hand from John Trafton for twelve hundred and fifty dollars each, secured by mortgage on a factory and water-power at Shapleigh, in the state of Maine, valued at twelve thousand dollars, and the balance of fifteen hundred dollars in cash. To this proposal Buck objected, insisting upon a larger payment in cash, in order to extinguish the incumbrances on the property; and Hamilton then proposed to pay two thousand dollars in cash, one of the Trafton notes, and the balance by his own note for seven hundred and fifty dollars, payable in nine months. That the complainant subsequently called on Hamilton for informatton respecting the Trafton note, and stated that if he could be satisfied in regard to that note, he would accept Buck's offer for the pro-

[Torrey v. Buck et al.]

perty; soon after which Buck informed Hamilton that he had purchased the complainant's property, and that he, Buck, would accept Hamilton's offer as last above stated for it, and named a day when they should go to Newark to consummate the contract. On the 10th of January, 1838, Hamilton, accompanied by his father and brother, (neither of whom had any interest in the purchase,) and by Buck, went to Newark, and there completed the purchase. Before any thing was done in consummation of the contract, Hamilton told the complainant, in answer to his inquiry respecting the value of the stock of the "United States foreign and domestic exchange company," that he knew nothing about it, had never heard of its existence until the inquiry was made, had no interest in it, and knew nothing of its value. Complainant then stated that he was to take fifty shares of it in part payment for the property; that he had made inquiries of various persons respecting it, some of whom said it was worth something, and some that it was worth nothing; said he was aware it was a matter of speculation entirely; it was a lottery; it might be of value, and it might not; but he had determined to take it and run his chance. Buck was present at the time, and said he had told complainant he must satisfy himself about its value; that he, Buck, was cashier of the company, and that he would not make any representation to the complainant to induce him to take it; that complainant had made his own inquiries about it, and had concluded to take it let it be worth more or less; to which statement of Buck the complainant fully assented. Denies that Hamilton ever had any interest, directly or indirectly, in the stock of the said company, or that he ever made any representations about the company or its stock to the complainant, other than as above stated. States that as Buck had agreed to convey the property to Hamilton upon the terms above stated, it was agreed that the deed should be made directly from complainant to Hamilton; that the brother of Hamilton remained in Newark, by agreement among the parties, to finish the investigation respecting the title and incumbrances and to receive the deed, which was delivered to him accordingly, and

the consideration paid by him as the agent and attorney of Hamilton the defendant. That Trafton's note was not due until the 5th of July, 1838, and this defendant has every reason to believe that the note will be paid, as the maker, where he is known, is.represented to be a man of respectability and property; and that Hamilton afterwards discounted his own note for seven hundred and fifty dollars, but denies that he ever promised the complainant to discount Trafton's note. Denies that Hamilton ever treated with the complainant, or any other person except Buck, for the purchase of the property; that he ever proposed to buy provided the complainant would take part payment in the stock of said company; that he ever made any representations himself, or assented to any representations made by Buck, respecting the value of the stock, and that he had any further or other connexion with Buck in the purchase than as above stated. States that his contract was made entirely with Buck, in the city of New-York; that he went to Newark merely for the purpose of executing a contract previously made, and that the deed from the complainant was made directly to him at the request of the complainant and Buck, to save the expense of two deeds. Admits that possession of the premises was to have been delivered to Hamilton between the first and fifteenth of April, 1838, and that the complainant having refused to deliver the possession, Hamilton had commenced an action of ejectment to recover possession, as stated in the complainant's bill of complaint.

The defendant Robert Buck, answering for himself, saith, that he hath no knowledge of any negociation between the complainant and Loomis for the purchase of the property. Admits that he was cashier of the United States foreign and domestic exchange company, but denies that he ever told complainant that its stock was equal to cash. Admits that he purchased complainant's property for nine thousand dollars, to be paid as follows, viz. : five thousand dollars in the stock of said company; Trafton's note endorsed by this defendant for twelve hundred and fifty dollars, dated January 2d, 1838, and payable at six months; Samuel H. Hamilton's note for seven hundred and fifty dollars,

[Torrey v. Buck et al.]

payable at nine months, and the balance in cash. Denies that he ever gave complainant any opinion about the stock or its value, but told him that he must inquire for himself and satisfy himself of its value. States that complainant did inquire, and said that some persons told him it was of value, others that it was good for nothing; that he knew it was a lottery, but that he was determined to take it and run his chance, and so stated to this defendant. That this defendant answered truly all the inquiries put to him respecting said stock by the complainant; that he used no deception and made no misrepresentation to the complainant, for he referred the complainant to others for information as to the character of the stock and its value, and expressly refused to give any opinion himself respecting it. Admits the contract with Hamilton and the sale of the property to him, as set forth by Hamilton in his answer. Denies that there was any other connexion between this defendant and his co-defendant Hamilton than as above stated in his answer, or that he or any other person to his knowledge or belief, did any act or made any representation calculated to deceive or defraud the complainant. Admits the delivery of Trafton's note and the scrip of the company in part satisfaction of the purchase money for said premises. Denies that he, or any other person in his presence, ever promised to discount the Trafton note. Denies that he has any knowledge of Trafton or of his ability to pay the note, or that he ever made any representations to the complainant respecting it. Admits the refusal of the complainant to deliver possession of the premises, and the bringing of an action of ejectment by Hamilton to recover possession.

The cause came on for hearing upon the pleadings and proofs, at a special term held at Newark, on the 3d of August, 1840.

*O. S. Halsted* and *I. H. Williamson,* for complainant, insisted that as between Torrey and Buck, the transaction was fraudulent. The contract was made and the fraud perpetrated by Buck, and he cannot protect himself by having the deed made to a third person. Such third person is not, and cannot

be placed in the light of a bona fide purchaser without notice.

That the concealment of material circumstances by one of the parties to a contract, was always a ground for relief in equity. *Suppressio veri* affords as perfect a ground for relief as *suggestio falsi*: *Broderick* v. *Broderick*, 1 *P. W.* 239; *Pierson* v. *Morgan*, 2 *Bro. Chan. Cas.* 389; *Maddeford* v. *Austerick*, 2 *Cond. Eng. Chan. R.* 45; *Bolles* v. *Stewart*, 1 *Sch. and Lef.* 209; *Gordon* v. *Gordon*, 3 *Swanston*, 473; *Hitchcock* v. *Geddings*, 2 *Cond. Exc. R.* 55; *Turner* v. *Harvey*, 4 *Cond. Eng. Chan. R.* 79; *Groves* v. *Perkins*, 9 *Cond. Eng. Chan. R.* 415.

The stock of the company which was transferred to the complainant in part payment of the purchase money for his property, was of no value whatever. The company was a mere bubble; it had no character. Its stock never possessed any value. Equity will compel the repayment of money paid upon such a consideration, and is bound to relieve against a contract founded on such consideration: *Colt* v. *Woollaston*, 2 *P. W.* 154.

The fact that the cashier of a company, who must have known its condition, refused to give any opinion or information respecting its character, or the value of its stock, is in itself evidence of fraud.

The court may make a decree as between the defendants, directing Buck to return the patent right conveyed to him by Hamilton.

*F. B. Chetwood* and *A. Armstrong*, contra, cited 2 *Story's Eq.* 5; 6 *Johns. Chan. R.* 223.

The Chancellor. The object of this suit is to set aside and declare null and void, a conveyance executed by the complainant to Samuel H. Hamilton, one of the defendants, for fraud and misrepresentation. It is a contract executed, and presents, therefore, a very different question from that where a party calls upon the court to compel a specific performance. Those

cases always rest in sound discretion, and the contract will be enforced or not, as shall appear most agreeable to justice and equity. This is a case which must abide the result, one way or the other, of the stern proof of fraud. This fraud may be made out either by a direct proof of certain facts, or may be inferred from the circumstances attending the whole case.

The complainant was the owner of a valuable house and lot of land in Newark, and in the fall of 1837, being desirous of disposing of it, negociated for that purpose in the first instance with Lewis Loomis, and actually concluded a bargain to convey it to him for ten thousand dollars. After some chaffering and delay, Loomis declared his inability to fulfil the contract himself, but said he could introduce the complainant to a gentleman who would buy his place, and accordingly introduced him to the defendant, Buck. After taking time to examine the property, Buck finally agreed with the complainant to purchase it for nine thousand dollars, and to pay him five thousand dollars in the stock of a company in the city of New-York, of which he the said Buck was cashier, called the " United States foreign and domestic exchange company," twelve hundred and fifty dollars in a note of John Trafton of the state of Maine, and the residue in money. There was a mortgage on the place of seven hundred and fifty dollars, which was to make so much of the purchase money. The result was that the complainant, in January, 1838, conveyed his property for the consideration of nine thousand dollars—seven hundred and fifty dollars of which was the amount of the mortgage on the place, five thousand one hundred dollars in the stock of the aforesaid company, twelve hundred and fifty dollars in the Trafton note, and the balance, being nineteen hundred dollars, was paid in cash or its equivalent. The fraud charged relates to the Trafton note and the stock, from which the complainant has never realized any thing, and which it is alleged are not now, and were not at the time of the transaction, of any value. As these constitute a great part of the consideration, it becomes very important to look into the charges of fraud, and see on what foundation they rest. The bill asks to

[Torrey v. Buck et al.]

have the contract rescinded upon returning whatever has been received by the complainant; showing thereby a willingness on the part of the complainant, while he asks equity, to do equity.

The case has been embarrassed somewhat by the introduction of a third party, the defendant Samuel H. Hamilton, to whom the deed for the property, at the instance of Buck, was finally made by the complainant; and yet I do not see how it varies the case. The bargain was made between the complainant and Buck; this is admitted by the defendants' answers; and the deed made on such bargain, by direction of Buck, (who had made a further contract with Hamilton,) directly to him to avoid multiplicity of deeds. Hamilton cannot claim, in such case, to stand in any other or better situation than Buck would, had the deed been made to him. The conveyance is made on the contract entered into between the complainant and Buck, and the mere substitution of the name of another person, at the instance of Buck, cannot place that person in the situation of a bona fide purchaser without notice. The three defendants, Loomis, Buck and Hamilton, all lived in the city of New-York; Loomis and Buck appear to have been acquainted, so do Hamilton and Buck, but not Hamilton and Loomis. Hamilton had a patent right for sawing timber and felling trees, which he was selling out with the right for certain states. He had sold the right for the state of Maine to Trafton, for which he got the note heretofore referred to, and in which purchase, it would seem, Buck was interested; and the arrangement made between Buck and Hamilton was, that he should take the deed from the complainant for his property, pay him the money, give him the Trafton note and the stock, and for the stock give to him, Buck, the right for the aforesaid patent for the states of Vermont and Massachusetts. The result of all this was, that Buck got the right for said patent in the states of Vermont and Massachusetts for his stock; and Hamilton, for such patent right, for the Trafton note, and about nineteen hundred dollars in money, got a deed for the complainant's property worth nine thousand dollars, subject to a mortgage

[Torrey v. Buck et al.]

of seven hundred and fifty dollars. The complainant has realized as yet only the nineteen hundred dollars paid in money, with, as I presume from the evidence, little or no prospect of ever receiving one cent more.

Was the transaction fraudulent, or not; and if so, can this court afford the relief asked? There is no more common head of equity jurisdiction than to relieve against frauds, and whenever they are made to appear in any of the transactions between man and man, this court is bound to relieve against them. I shall consider this case as if the deed had been made direct to Buck; that will disentangle it, and, as I have already stated, the fact that the deed was filled up with the name of Hamilton, instead of that of Buck, cannot, in my judgment, in any way affect the case. There is no pretence that the complainant had any thing to do with the contract between Buck and Hamilton, nor, indeed, does it appear that he was even informed what that contract was. He dealt only with Buck.

As to the fraud charged in the Trafton note, I am of opinion there is no proof that will justify any such conclusion. The mere fact that the note was not paid at maturity, furnishes no such proof. As the note was not due at the time the complainant received it, it came to him as a negociable instrument, and many of the legal objections to it were thereby removed, if any existed. But I do not perceive that any effort has been made by the complainant to recover the money since the note became due. I can see no ground for saying, from the evidence in this cause, either that the note was not valid and binding on the maker, or that he was unable at the time it was made, or has become so since, to discharge it. We know there have been great vicissitudes in the condition of very many men within the last few years, and a large amount of the obligations made in good faith and with an honest intention, remain undischarged. If the complainant intended to rest his case at all on this point, he was bound to show what was the consideration of the note, and what the condition of the maker. For aught that I can discover, the note may have been given for value, and the maker able to pay.

49

[Torrey v. Buck et al.]

I think, therefore, the charge of fraud, so far as this note is concerned, unsupported by the evidence.

The remaining ground for sustaining the charge of fraud, is of a very different character, and from the first breaking of the case before me, has made a deep impression on my mind. · What was this stock, of which Buck prevailed on the complainant to take five thousand one hundred dollars on a purchase of nine thousand dollars? I cannot learn that the company was ever incorporated under the laws of the state of New-York, though located in the city of New-York. I cannot learn that it ever had any standing either there or elsewhere, or indeed that any of its stock was ever sold or transferred except to the complainant. The defendants, in their first answer, do not say any thing on this subject, although the charge is distinctly made in the bill that the stock was of little or no value; and when, upon exception taken to the answer for this cause, and sustained, a further answer is put in, what says the defendant Buck to this part of the case? He answers literally, that he did not know at the time of the negociation, or at any other time, that said stock was "of little or no value;" that he had understood from the president that the company had mortgages to secure stock subscribed to an amount between two and four hundred thousand dollars, some of which he had seen; and that from such information he believed said stock to be "of value;" but of the precise or more certain amount of the value of said stock or of said mortgages, he professes to have had no other knowledge or information. That he never knew or heard of the price of any of the stock except that sold to the complainant, nor does he know any thing further of the value of the stock. What kind of answer is that to this important inquiry? The defendant, by the very mode of answering, must satisfy every mind that the charge against this stock was true—that it was a mere bubble. But the evidence has placed this subject beyond all doubt. *Harvey A. Hatch* testifies, that he knew this institution, and that the stock was of no value. He had five thousand dollars of the stock, and he does not think that any person who knew the institution would

have given him one dollar a share for it. That he had fifty dollars in the bills of the company, twelve dollars of which he gave away, and thirty-eight dollars of it he gave to his landlord to make him such allowance on his board as he could get for them. This was more than a year before, and his landlord had informed him that he could not get one cent for them. He further says, that he has heard the institution called a swindling institution by various persons, and from those who had been connected with it. *Daniel Mallory* says he knows this institution; it was got up by Albert C. Demeritt, who has a bad character. The stock never had any value. The institution was got up as a fraud, and was so considered by all. To this evidence there *is no witness called to make any contradiction.* There is no doubt that the stock is utterly worthless. The whole affair was a bubble, and if mortgages were taken for stock, there is little doubt it was upon very insufficient and uncertain property.

The defence, however, was not rested so much upon the stock being of any value, as upon the fact that the complainant had a full and fair opportunity to inquire into the character of the institution for himself, and particularly that the defendant over and over again declined to express any opinion himself as to its value. This last matter is evidently, from the answers and the evidence, considered by the defendants a strong point in their cause—that Buck would not give the complainant the slightest opinion as to the value of the stock, or the character of the institution, but referred him to others, and particularly to the president of the company.

There is a feature in this case which has a material bearing with me. The defendant, Buck, at the time of the negociation, was the cashier of this company, and as such had, or should have had, free access to all the papers, and full knowledge of its condition; and if any thing was concealed from him, that fact was certain evidence that all was not right. The fact that Buck, cashier as he was, declined to give the complainant any information respecting the company or its stock, and now predicating his defence mainly on that, furnishes, in my view, strong evi-

dence against him.  A cashier of a company, and know nothing of its affairs!—and that, too, when other people knew it to be worthless.  I cannot suppose such a state of things, and if it was so, it was notice to him that the institution, in the language of one of the witnesses, "had no bottom."  It is this very hold- ing back of information which in this case created all the diffi- culty.  A *suppressio veri* is as good a reason for setting aside a conveyance as a *suggestio falsi: Broderick* v. *Broderick*, 1 *Peere Williams*, 239 ; *Pearson* v. *Morgan*, 2 *Brown's Chan. Cases*, 389.  Suppose Buck had come out with the naked truth, and said, I am the cashier of this company, but whether it is worth any thing or not is matter of doubt ; I cannot say to you from my knowledge that the stock is worth one cent;—would the complainant have taken the stock ?  No.  It would have ended all the difficulty.  But he declined expressing any opinion, and referred him to others, and particularly to the president of the company.  The complainant did inquire, and said some persons told him it was good, and some that it was good for nothing ; that he knew it was a speculation, and he meant to run the risk.  If a case could be made excusing the fraud, found- ed on the folly and indiscretion of the complainant, this is cer- tainly that case.  The man seems to have been infatuated ; but the folly of the complainant can never justify the defendant in taking away his property without compensation.  This is not the case of stock which has varied in the market with the times, but of stock which never had any value.

I cannot tolerate the idea for one moment, that, relying on the weakness and credulity of the complainant, a man, himself the cashier, shall pass off the stock of a company without any value, to the amount of five thousand one hundred dollars on the pur- chase of nine thousand dollars, and then defend himself upon the ground that he did not profess to give him any information respecting it.

Fair dealing, and the preservation of the rights of men, call loudly, I think, on this court, to set aside this whole con- tract.

There has been much evidence as to the value of the property. I think that of no sort of consequence. The parties fixed upon their own price, and from the evidence, at the time, it would seem to me the price fixed was not much out of the way. Since then property has farther depreciated, and a restoration to the same state of things as existed before the execution of the deed will be less to be regretted by the defendants.

It is my opinion, after carefully examining this case, that the deed from the complainant to Samuel H. Hamilton should be set aside, upon his being repaid, with interest, the money advanced by him, and having returned to him the Trafton note and the certificates of stock; and that the injunction be made perpetual. As between the defendants, Buck must restore to Hamilton what he received for his stock, and take back his stock. The costs of the complainant to be paid by the defendant, Robert Buck. The bill, as to Loomis, must be dismissed.

The following decree was thereupon made:—"It is ordered, adjudged and decreed, that it be referred to William M. Scudder, esquire, one of the masters of this court, to take an account of all sums of money paid by the said defendant, Samuel H. Hamilton, either in part payment of the price of the lot of land and premises described and conveyed in and by the deed from the said complainant, Asa Torrey, and Mary his wife, to the said Samuel H. Hamilton, dated the thirteenth day of January, in the year of our Lord eighteen hundred and thirty-eight, and in the bill of complaint particularly set forth, or towards satisfaction of the amount of principal or interest due on any mortgage or other lien and incumbrance on the said land and premises at the date of the said deed, or otherwise, for the advantage and improvement of the said land and premises, or any houses or other buildings thereon; and also of the dates of all such payments, respectively. And it is further ordered, that upon the complainant's paying or tendering to the said defendant, Samuel H. Hamilton, or to his solicitor in this cause, within forty days after the said master shall have made his report, at such time

and place as the said master shall appoint, the full amount of such payments, as the same shall be ascertained and reported by said master, together with lawful interest thereon from the time of such payments, respectively, and upon the complainant's delivering to the said defendant, Samuel H. Hamilton, or to his solicitor in this cause, a certain promissory note mentioned in the complainant's bill of complaint, dated the second day of January, in the year of our Lord one thousand eight hundred and thirty-eight, made and signed by one John Trafton, for the payment of twelve hundred and fifty dollars in six months from the date thereof, to the said Robert Buck or order, and by him endorsed ; and also upon the complainant's assigning and transferring to the said Samuel H. Hamilton, all the shares and interest of and in the United States foreign and domestic exchange company, mentioned in the pleadings and proofs in this cause, which were received by the said complainant in part payment of the price of the said land and premises above mentioned, the said deed of conveyance from the said Asa Torrey and Mary his wife, to the said Samuel H. Hamilton, shall be vacated and rendered null and void, and the said Samuel H. Hamilton shall and do reconvey the said land and premises in the said deed described, to the said Asa Torrey, or to such person as he shall appoint, free and clear of and from all incumbrance done or made by the said Samuel H. Hamilton, or by any claiming by, from or under him ; and also, that the injunction heretofore issued in this cause be made perpetual.   And in case the said complainant shall not, within the time aforesaid, pay or tender to the said Samuel H. Hamilton, or to his solicitor in this cause, the full amount which shall be ascertained and reported by the master as aforesaid, together with the interest thereon as aforesaid, and also deliver to the said Samuel H. Hamilton, or his solicitor, the said promissory note of John Trafton, and also assign and transfer to the said Samuel H. Hamilton the said shares and interest in the said the United States foreign and domestic exchange company, it is further ordered, adjudged and decreed, that in that case the said complainant's bill do stand dismissed out of this

[Torrey v. Buck et al.]

court, so far as relates to or concerns the said Samuel H. Hamilton, with costs to be taxed. And it is further ordered, adjudged and decreed, that the said defendant, Robert Buck, do reconvey to the said Samuel H. Hamilton, or to such person as he shall appoint, the patent right for felling forest trees and sawing timber in the states of Massachusetts and Vermont, mentioned in the pleadings and proofs in this cause, upon the said Samuel H. Hamilton assigning and transferring to the said Robert Buck, or to such person as he shall appoint, the shares and interest of and in the said the United States foreign and domestic exchange company, above directed to be assigned and transferred by the said Asa Torrey to the said Samuel H. Hamilton ; and that the complainant's bill of complaint be dismissed as against the said Lewis Loomis ; and that the said Robert Buck do pay to the complainant his costs in this suit, to be taxed. And for the better taking of the account above directed, the parties are to produce before the said master, as they shall be required, all deeds, books, papers and writings in their custody or power, relating to the matters above referred to the said master, and are to be examined upon interrogatories touching the same, as the said master shall direct ; and that the testimony and exhibits heretofore taken or made in the cause, may be used before the said master, and the parties shall also be at liberty to take further evidence in relation to the matters hereby referred ; and the said master is to make his report with all convenient speed, and any of the parties are to be at liberty to apply to the court as occasion shall require."